UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INSIGHT GLOBAL, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BEACON HILL STAFFING GROUP, LLC,<br><br>　　　　Defendant. | Case No. 5:17-cv-00309-BLF (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 1**<br><br>Re: Dkt. No. 37 |

The event that sparked this acrimonious dispute began on October 26, 2016. On that date Insight Global LLC ("Insight"), a staffing services company, fired John Barker, the manager of Insight's San Francisco office. Soon thereafter Barker obtained comparable employment with Beacon Hill Staffing Group LLC ("Beacon Hill"), another staffing services company, one that competed with Insight. Barker then sued Insight to recover deferred compensation that allegedly was wrongfully denied to him and also sought a declaratory judgment that certain non-competition and non-solicitation restrictions on him in his Insight employment agreement were unlawful and void under California law. Insight cross-complained against Barker for his alleged breach of the employment agreement, in particular for him having successfully solicited three valuable Insight employees (Messrs. Cronin, McArthur, and Verduzco) to quit Insight and join him at Beacon Hill. *See* 5:16-cv-07186-BLF *Barker v. Insight Global* ("Barker Action").

A month after Barker filed his lawsuit, Insight filed the present lawsuit against Beacon Hill. (The presiding judge related the two cases, and they will be tried together.) This second suit alleges that Beacon Hill induced Barker to breach his non-competition and non-solicitation obligations to Insight. Further, it claims that Beacon Hill, in cahoots with Barker, wrongfully wooed away Insight employees Cronin, McArthur, and Verduzco to Beacon Hill and then encouraged them to use Insight's confidential business information to solicit Insight's customers. Some of this information, customer lists for example, was alleged to be trade secrets. At least one of the three "pirated" employees is alleged to have accessed Insight's computer system for the purpose of stealing non-public information for use on behalf of Beacon Hill.

Here, in Discovery Dispute Joint Report ("DDJR") #1 Insight wants discovery inspired by an event that took place just before Verduzco quit Insight and went to Beacon Hill. According to Insight, Verduzco came into his office after hours, accessed the computer network, and looked at "trade secret" information on 17 Insight clients in the Sacramento area. The court is told that Verduzco acknowledged his actions in deposition, but offered a plausible and benign explanation for it. Not surprisingly, Insight scoffs at the explanation and asserts that here is solid evidence of misappropriation. It created a list of 17 Sacramento customers ("Schedule A") as well as another of 49 "hiring managers" ("Schedule B"). Presumably, each hiring manager worked for one of the 17 customers.[1] And, it wants everything there is to know about Beacon Hill's involvement with the 17 and the 49. Here are the Requests for Production of Documents (RFPs):

RFP 83: "Any and all emails and text messages from December 15, 2016 to the present between an employee of Beacon Hill's San Francisco or Sacramento offices and a client listed on Schedule A."

RFP 84: "Any and all documents from January 1, 2016 to the present pertaining to a meeting between an employee of Beacon Hill's San Francisco or Sacramento offices and a client listed on Schedule A."

RFP 85: "Any and all documents from January 1, 2016 to the present pertaining to

---

[1] At page 4, footnote 4 of DDJR #1 Insight, apparently mistakenly, refers to the 49 as "Insight Global hiring managers."

2

revenues generated from a client listed on Schedule A."

RFP 86: "Any and all emails and text messages from December 15, 2016 to the present between an employee of Beacon Hill's San Francisco or Sacramento offices and a hiring manager listed on Schedule B."

RFP 87: "Any and all documents from January 1, 2016 to the present pertaining to a meeting between an employee of Beacon Hill's San Francisco or Sacramento offices and a hiring manager listed on Schedule B."

RFP 88: "Any and all documents from January 1, 2016 to the present pertaining to revenues generated from a hiring manager listed on Schedule B."

This court is somewhat dubious about what Insight sees as a misappropriation "smoking gun." First, Insight acknowledges that there is no evidence Verduzco downloaded or printed out any information. Insight's FRCP 30(b)(6) witness admitted that it had no evidence that it lost any customers or suffered a decline in revenue following Verduzco's departure (*see* Barker Action, Dkt. 133, DDJR #9). Insight's Complaint (Dkt. 1, ¶ 85) acknowledges that customers do not always deal solely with a single staffing agency and sometimes offer multiple agencies the opportunity to fill a hiring need (thus undercutting the "secretness" of the customer list).

Nevertheless, the current discovery requests about customers is not as broad as what Insight wanted in Barker Action DDJR #4, which sought reams of customer information without naming any customer. The court denied that discovery because Insight had not (could not) identify any actual, affected customer. Here, while not identifying an affected customer, at least it has named 17 customers that possibly could be affected. That's enough to entitle it to some discovery.

To date, this court has ruled on eleven DDJRs in the related Barker Action. Some of those rulings implicate and inform the present discovery dispute. Here, Insight's discovery requests are reminiscent of its document requests in DDJR #2, an approach which the court rejected as an "extreme example of discovery overreach," and DDJR #4 where the court "smell[ed] another fishing expedition," and DDJR #5, where the court told Insight to stop trying to get "hold of a mass of information, which may or may not contain information on the issues at hand, rather than

3

asking for discovery on the issues themselves."

In this court's opinion, RFPs 83-88 are onerously broad, seeking "all" e-mail and texts and "all" documents "pertaining" to meetings or revenue. RFPs # 83 and 86 want everything from December 15, 2016 to the present (over 15 months). RFPs # 84, 85, 87, and 88 want everything from January 1, 2016 (10 months *before* Barker was fired) to the present. Since Insight's showing of trade secret misappropriation is not weighty, the discovery the court feels Insight is entitled to is not nearly as extensive as Insight seeks. The court will craft what it sees as fair and proportionate.

As to the Sacramento-area office of each company listed on Schedule A (a company office which Insight has represented was its "customer" as of December 2016), Beacon Hill shall produce ESI sufficient to identify the following:

1. The date when any Beacon Hill San Francisco or Sacramento office employee first had contact with that customer;

2. The date when any Beacon Hill employee first had contact with that company at one or more of its other offices;

3. The date when any Beacon Hill San Francisco or Sacramento office employee first met with a hiring manager of the customer;

4. The date Beacon Hill first received a requisition from the customer to fill a temporary staffing need;

5. The date Beacon Hill first earned revenue from the customer;

6. The date Beacon Hill first received a staffing requisition from one or more other offices of the company;

7. The date Beacon Hill first earned revenue from one or more other offices of the company.

Otherwise, Insight's request to compel the production sought in RFPs 83-88 is denied. Depending on Beacon Hill's responses, the court is not necessarily ruling out further discovery on

this subject. Production shall take place within 30 days.

SO ORDERED.

Dated: March 29, 2018

_____
HOWARD R. LLOYD
United States Magistrate Judge