UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INSIGHT GLOBAL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>BEACON HILL STAFFING GROUP, LLC,<br><br>    Defendant. | Case No. 17-cv-00309-BLF (VKD)<br><br>**ORDER RE JOINT DISCOVERY DISPUTE LETTER RE DEFENDANT'S ASSERTION OF PRIVILEGE AND WORK PRODUCT PROTECTION**<br><br>Re: Dkt. No. 43 |

Plaintiff Insight Global, LLC ("Insight Global") challenges defendant Beacon Hill Staffing Group, LLC's ("Beacon Hill") assertion of attorney-client privilege and attorney work product protection with respect to 19 documents on Beacon Hill's privilege log.[1] The Court finds this dispute suitable for decision without a hearing.

## I. BACKGROUND

In this action, Insight alleges that Beacon Hill acted in concert with one of Insight Global's former employees, John Barker, in soliciting and encouraging Insight Global employees to leave Insight Global and work for Beacon Hill. Insight Global asserts state law claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, inducing breach of contract and violation of California Business & Professions Code § 17200, as well as federal and state law claims for trade secret misappropriation. Dkt. No. 1.

The challenged documents are items 1-4, 7-12, 15-18, and 20-24 on Beacon Hill's privilege log. Dkt. No. 43-1. Beacon Hill's privilege log identifies each document as an email,

---

[1] The caption of the parties' joint discovery dispute letter suggests that the parties believe the issues in dispute here also arise in a related case, *Barker v. Insight Global, LLC*, Case No. 17-cv-07186-BLF. That matter also includes federal and state claims.

and provides the date, sender, recipient, and copyee for each. It does not describe the subject matter or purpose of any of the emails. As reflected in the privilege log, each email is from Mr. Barker to Jeff McClaren, Managing Director and Executive Vice President of Beacon Hill, or from Mr. McClaren to Mr. Barker. Each email copies Robert Levy, who is identified as "outside General Counsel" of Beacon Hill. All of the emails were exchanged between December 5 and December 18, 2016. *Id.* According to the privilege log, Beacon Hill claims that each email is protected from disclosure by the attorney-client privilege and the attorney work product doctrine. *Id.*

Insight Global says that none of these emails is protected from disclosure because they are merely business communications exchanged between Mr. McClaren and Mr. Barker, and Mr. Levy is simply a passive recipient. As Mr. Barker was not yet an employee of Beacon Hill, Insight Global argues, the communications cannot be confidential, privileged exchanges between Beacon Hill and Mr. Levy because they included Mr. Barker, a third party outside the attorney-client relationship. Insight Global further argues that, as Mr. Levy did not direct the exchange of emails between Mr. McClaren and Mr. Barker, these communications cannot be considered attorney work product either. Dkt. No. 43 at 4-5.

Beacon Hill counters that all of the emails in question were exchanged after Beacon Hill gave Mr. Barker an employment offer, and many occurred after Mr. Barker had accepted that offer. *Id.* at 7. Beacon Hill says that the sole purpose of the emails was to obtain legal advice from Mr. Levy about hiring Mr. Barker, given Beacon Hill's prior history of filing suit whenever Beacon Hill hires a former Insight Global employee. It says that Mr. Barker should be deemed an employee of Beacon Hill for purposes of evaluating the challenged emails, or that the Court should consider his status to be analogous to the status of a former employee who engages in privileged communications with his former employer's counsel about matters within the scope of his prior employment.

Before turning to the legal standard applicable to this dispute, the Court notes that in cases where the same evidence relates to both federal and state law claims, federal privilege law governs. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). Although the parties do not

expressly address the issue, it may be inferred from Beacon Hill's arguments that Beacon Hill contends that the documents in question pertain only to the state law claims at issue and that state law therefore governs Beacon Hill's privilege claims. The essential principles concerning the attorney-client privilege are the same under federal and state law, but application of those principles differs in at least one significant respect: As discussed below, Beacon Hill contends that state law precludes this Court from ordering an *in camera* review of the documents in question to determine if the documents are privileged. While Insight Global suggests that this Court may disregard that particular feature of state law, it does not clearly dispute Beacon Hill's apparent contention that state law applies. Accordingly, in resolving this dispute, this Court accepts the parties' apparent agreement that the documents in question pertain only to Insight Global's state law claims and that California's privilege law applies.

**II.     LEGAL STANDARDS**

Rule 26(b)(1) of the Federal Rules of Civil Procedure shields privileged documents from discovery. Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). In California, the attorney-client privilege is described in the Evidence Code § 950 *et seq*. According to that code, a client has the privilege "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." Evid. Code § 954. A "confidential communication" is:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other that those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Evid. Code § 952.

The attorney-client privilege protects only confidential communications between attorney and client made for the purpose of seeking or delivering legal advice or representation. *Los*

1 *Angeles County Board of Supervisors v. Superior Court*, 2 Cal.5th 282, 293-94 (2016). A client
2 cannot protect unprivileged information from discovery simply by transmitting it to an attorney or
3 by including an attorney in an otherwise unprivileged communication. *Costco Wholesale Corp. v.*
4 *Superior Court*, 47 Cal.4th 725, 735 (2009)

5      Rule 26(b)(3) also shields from discovery documents that fall within the scope of the
6 attorney work product doctrine, unless certain exceptions apply. Fed. R. Civ. P. 26(b)(3). In
7 contrast to the attorney-client privilege, a district court applies federal law to resolve work product
8 issues, even where the only claims at issue arise under state law. *See Baker v. Gen. Motors Corp.*,
9 209 F.3d 1051, 1053 (8th Cir. 2000); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th
10 Cir. 2006); *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702-03 (10th Cir.
11 1998); *United Coal Cos. v. Powell Construction Co.*, 839 F.2d 958, 966 (3d Cir. 1988). The work
12 product doctrine protects the mental processes of an attorney, and prohibits discovery of
13 "documents and tangible things that are prepared in anticipation of litigation or for trial by or for
14 another party or its representative," unless certain exceptions apply. Fed. R. Civ. P. 26(b)(3);
15 *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947).

16      Beacon Hill, as the party asserting attorney-client privilege and work product protection,
17 bears the burden of proving that the privilege or protection applies. *See*, *e.g.*, *U.S. v. Ruehle*, 583
18 F.3d 600, 607-08 (9th Cir. 2009); *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514
19 (N.D. Cal. 2012).

20 **III. DISCUSSION**

21     **A. Attorney-Client Privilege**

22      The dispute before the Court raises two issues with respect to Beacon Hill's assertion that
23 the emails are privileged: The first is whether the emails are confidential communications
24 between Beacon Hill (acting through its employee, Mr. McClaren) and its counsel Mr. Levy, or
25 whether they are presumptively not confidential because they involve a non-employee outside the
26 scope of the attorney-client relationship. The second is whether Mr. Levy was copied as a passive
27 recipient of non-privileged business communications, or whether the communications were copied
28 to him for the purpose of seeking legal advice.

4

Mr. Barker's role in the challenged email communications is critical to resolving the first issue. Beacon Hill first suggests that Mr. Barker was effectively an employee for purposes of the privilege analysis because all of the email communications took place after he was given an offer of employment, and all but two took place after he had accepted the offer, but before he actually became an employee. Alternatively, Beacon Hill suggests that Mr. Barker's role is analogous to the role of a former employee who participates in a communication with his employer's counsel about matters within the scope of the employee's prior employment. Dkt. No. 43 at 7-8.

Insight Global responds that Mr. Barker was not an employee of Beacon Hill at the time of the communications; he was a third party whose participation in the emails destroys their confidentiality. Moreover, Insight Global says, unlike a former employee, a person who has never been an employee has no information or role that can be considered within the scope of his former employment, and he has never been an agent of the employer. Dkt. No. 43 at 4-5.

Neither party cites any California authority addressing the particular circumstances presented by this dispute—namely, pre-employment communications by a prospective employee who has received or signed an employment offer with a prospective employer's outside counsel. Insight Global relies on three federal district court cases, *United States v. Stepney*, 246 F. Supp. 2d 1069 (N.D. Cal. 2003), *In re Oracle Securities Litigation*, Case No. C-01-0988 MJJ (JCS), 2005 U.S. Dist. LEXIS 46931 (N.D. Cal. Aug. 5, 2005), and *Genentech, Inc. v. Trustees of University of Pennsylvania*, No. C10-2037PSG, 2011 WL 5079531 (N.D. Cal. Oct. 24, 2011). These cases are not particularly helpful, as they do not address circumstances similar to those presented here.

Beacon Hill relies on two Ninth Circuit cases, *Admiral Insurance Co. v. U.S. District Court for the District of Arizona*, 881 F.2d 1486 (9th Cir. 1989) and *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355 (9th Cir. 1981), for the proposition that a communication between corporate counsel and a former employee may be privileged if the purpose of the communication is to obtain information in the former employee's possession that corporate counsel needs in order to advise the former employer. These cases are instructive in that they highlight the underlying rationale for the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), regarding the proper scope of attorney-client

5

privilege when the client is a corporation. Recognizing that corporations act and communicate through individual employees or agents, *Upjohn* held that the privilege applies to communications between corporate counsel and a corporate employee where the communication concerns matters within the scope of the employee's corporate duties and is undertaken for the purpose of enabling counsel to provide legal advice to the corporation. *Upjohn*, 449 U.S. at 394-95; *Admiral Insurance*, 881 F. 2d at 1492. The same is true of a former employee of a corporation who possesses information within the scope of his or her prior corporate duties that counsel needs in order to advise the corporate client. *See In re Coordinated Pretrial Proceedings,* 658 F.2d at 1361 n.7.[2] The key consideration in *Upjohn* is that the current or former employee of a corporate client has information *of the corporation* that the corporation's counsel needs in order to advise his or her client.

Beacon Hill has not shown that Mr. Barker possessed any information of Beacon Hill, Mr. Levy's client, at the time he participated in the challenged email communications. Beacon Hill has not even shown that the information Mr. Barker provided to Mr. Levy was within the scope of his anticipated duties as a prospective employee of Beacon Hill. Beacon Hill relies solely on the argument that because Mr. Levy *needed* whatever information Mr. Barker provided in order to provide legal advice to Beacon Hill, Mr. Barker's participation in communications intended to facilitate such advice does not destroy the privilege.[3] This is not how attorney-client privilege works. The privilege does not protect information of third parties simply because that information may be important for the provision of legal advice; it protects *confidential communications*

---

[2] Beacon Hill does not cite any California authority for the proposition that the attorney-client privilege extends to former employees of a corporation. In any event, for the reasons discussed above, the Court is unpersuaded that Mr. Barker may be treated as the equivalent of a former employee for purposes of applying the attorney-client privilege to the documents at issue.

[3] Beacon Hill does not contend that Mr. Barker's participation in the email exchange between Mr. McClaren and Mr. Levy was necessary to facilitate the rendering of legal advice to Beacon Hill in the same way that a third-party translator, for example, is deemed necessary to the communication. *See, e.g., Farahmand v. Jamshidi*, No. Civ. A04-542(JDB), 2005 WL 331601 (D.D.C. Feb. 11, 2005) (third party served necessary role as translator to assist attorney in understanding client). Rather, it appears that whatever information Mr. Barker had could have been supplied to Mr. McClaren, who then could have sought legal advice on behalf of Beacon Hill from Mr. Levy, without involving Mr. Barker in the communication.

6

between *counsel and client* for the purpose of seeking or providing legal advice. Where the client is a corporation, the concept of "client" includes those acting on behalf of the corporation as well as those who have information of the corporation as a result of their current or former duties to the corporation. On the record presented, Beacon Hill has not shown that Mr. Barker's involvement meets these criteria or is otherwise analogous to the circumstances of a former employee, such that he should be considered part of the attorney-client relationship between Mr. Levy and Beacon Hill.

Because the Court finds that Beacon Hill has not demonstrated that the challenged emails are confidential communications between Beacon Hill and its counsel Mr. Levy, the Court need not reach the second issue presented by the motion—i.e. whether the emails are business communications or whether they seek legal advice. Indeed, the Court could not make this determination on the record before it. Beacon Hill characterizes the purpose of the emails as seeking legal advice from Mr. Levy regarding the hiring of Mr. Barker; Insight Global characterizes them as business-related communications. Neither Beacon Hill's privilege log nor its supporting declarations contain sufficient detail to permit the Court to evaluate which party is correct.

### B. Attorney Work Product

Beacon Hill objected to production of each of the challenged emails on the ground that they constitute attorney work product as well as privileged communications. The privilege log itself does not contain sufficient information to support a claim for attorney work product protection for any of the challenged emails. In its portion of the joint discovery dispute letter, Beacon Hill says that Insight Global has, in the past, sued Beacon Hill whenever Beacon Hill hires a former Insight Global employee. However, Beacon Hill does not expressly or persuasively argue that the emails are work product. Nor does it respond to Insight Global's arguments that they are not work product; it simply recites the legal proposition that "documents and communications prepare[d] by a client at the direction of counsel are protected by attorney-work product." *See* Dkt. No. 43 at 8.

It is Beacon Hill's burden to support a claim that the attorney work product doctrine

1  applies. It has not done so. The challenged emails may not be withheld from production as
2  attorney work product.

### C. *In Camera* Review

Where the Court is asked to resolve a challenge to one party's claim of attorney-client privilege, the Court ordinarily finds it useful, and prudent, to be able to review *in camera* the documents that have been withheld. This review allows the Court to ensure that the important protections afforded by the attorney-client privilege are given due consideration, and that the Court's decision does not turn on the characterization of disputed documents by the parties. *See, e.g., Newmark Realty Capital, Inc. v. BCG Partners, Inc.*, No. 16-cv-01702-BLF (SVK), 2018 WL 2357742, at *2 (N.D. Cal., May 24, 2018) (ordering an *in camera* review of claimed attorney-client privileged and attorney work product materials where the party seeking discovery "established reasonable, good faith doubts about the propriety of the redactions" made to the disputed documents).

In this case, Beacon Hill objects to *in camera* review of the challenged emails, citing *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725 (2009), which holds that under California law a court may not order *in camera* disclosure of information claimed to be privileged in order to determine if the communication is privileged, although the party claiming privilege may consent to such disclosure. *Costco*, 47 Cal. 4th at 738-39 ("[N]othing in Evidence Code section 915 prevents a party claiming a privilege from making an in camera disclosure of the content of a communication to respond to an argument or tentative decision that the communication is not privileged."). Beacon Hill does not consent, and so the Court has relied exclusively on Beacon Hill's characterization of the emails.

### IV. CONCLUSION

The Court grants Insight Global's motion to compel disclosure of items 1-4, 7-12, 15-18, and 20-24 on Beacon Hill's privilege log because Beacon Hill has not demonstrated that the attorney-client privilege or the attorney work product doctrine apply to prevent disclosure. However, this Court will stay this order for seven days to allow time for Beacon Hill to decide whether it would prefer to have this Court review the subject documents *in camera* before

8

requiring their production. Accordingly, no later than December 20, 2018, Beacon Hill shall advise whether it requests an *in camera* review. If Beacon Hill requests a review, then it shall lodge the disputed documents with the undersigned's chambers by December 20, 2018, and the stay of this order will be extended pending this Court's review of those documents.

**IT IS SO ORDERED.**

Dated: December 13, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge